UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OSCAR LEE OLIVE, IV,<br><br>                Plaintiff,<br><br>   v.<br><br>HAYLEY MARIE ROBINSON, JUSTUS KEPPEL,<br><br>                Defendants. | CASE NO. 2:18-cv-00862-BAT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

On June 27, 2019, the Court entered an Order of Default as to Defendant Justus Keppel only. Dkt. 53. Thereafter, Plaintiff filed a motion for the entry of a default judgment, along with a brief, affidavits, and supporting documents. Dkt. 54. Defendant Keppel filed no response. On September 3, 2019, Plaintiff provided additional evidence. Dkts. 59 and 60.

Having carefully reviewed Plaintiff's claims and the evidence submitted, the Court finds that the motion should be granted in part and denied in part, as described herein.

## BACKGROUND

In his Amended Complaint, Plaintiff alleges Defendants Robinson and Keppel[1] made statements on a Facebook website that were knowingly false when made, were intended to harm him, and that caused him to suffer financial and emotional injuries in excess of $1.5 million. Dkt.

---

[1] The correct spelling of Defendant Keppel's last name appears in counsel's Notice of Appearance (Dkt. 15) and Answer to the Amended Complaint (Dkt. 18).

ORDER RE: MOTION FOR DEFAULT JUDGMENT - 1

11. This case was automatically stayed as to Defendant Robinson after she filed for Chapter 7 bankruptcy. *See* Dkt. 52.

The procedural history of this case and relevant facts leading to entry of an order of default against Defendant Keppel are set forth in the Court's Order of Default and Briefing Schedule. Dkt. 53. Additional facts and procedure are discussed where relevant herein.

## DISCUSSION

A.  Entry of Default Order

Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 55(b) authorizes a district court to grant default judgment. Typically, default judgment is entered after the Clerk of Court has entered default under Rule 55(a). However, district courts also have the authority to declare a default as a sanction. *See*, *e.g.*, *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir.2011); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990). Before doing so, a court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Id*.

The Court thoroughly analyzed the foregoing factors and concluded that sanctions, including terminating sanctions, were warranted due to Defendant Keppel's continued failure to respond to discovery requests and his willful disobedience of this Court's orders. Dkt. 49. Rather than issue terminating sanctions at that time however, the Court issued the lesser sanction of a $500 payment and another deadline to submit discovery responses. *Id*. After Defendant Keppel failed to comply with these lesser sanctions, the Court entered an Order of Default as to Defendant Keppel and set a briefing schedule for the parties to submit briefs and evidence to assist the Court in determining an award of damages. Dkt. 53, p. 5. Specifically, Plaintiff was

directed to submit a declaration and other evidence establishing his entitlement to a sum certain and to any other nonmonetary relief sought. *Id.*

Plaintiff filed a brief in support of his motion for default judgment and declarations. Dkts. 54, 55, and 56. After review, the Court found the evidence submitted by Plaintiff was insufficient to determine whether his damage claims are fair, reasonable, and related to his claims. Because Plaintiff is pro se, the Court allowed Plaintiff to support additional proof. Defendant Keppel was also allowed time to respond to any additional proof submitted. Dkt. 58, p. 5. Plaintiff submitted his additional proof (Dkts. 59 and 60), which is discussed in more detail herein. Defendant Keppel again filed no response.

B. <u>Standards Governing Entry of Default Judgment</u>

Motions for entry of default judgment are governed by Fed.R.Civ.P. 55(b), which provides that the Clerk of Court may enter default judgment when the plaintiff's claim "is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). When the value of the claim cannot be readily determined, or when the claim is for non-monetary relief, the plaintiff must move the court for entry of default judgment. *Id*. at 55(b)(2). In such circumstances, the court has broad discretion to marshal any evidence necessary in order to calculate an appropriate award. *See id*. at 55(b)(2) (A)-(D).

Granting or denying relief is entirely within the court's discretion and thus, a defendant's default does not automatically entitle a plaintiff to a court ordered judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). In addition to determining whether Plaintiff has adequately proven the amount of damages he seeks, the Court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy

ORDER RE: MOTION FOR DEFAULT JUDGMENT - 3

underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986) (the "*Eitel* factors").

At the default judgment stage, the court presumes all well-pleaded factual allegations are true, except those related to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.1977); *Microsoft Corp. v. Lopez*, 2009 WL 959219 (W.D.Wash.2009). Judgment by default is an extreme measure and a case should, "whenever possible, be decided on the merits." *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1170 (9th Cir. 2002); *also see Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009). Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir.1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)).

C. <u>Jurisdiction</u>

"To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, *i.e.*, the jurisdiction, to enter the judgment in the first place." *See In re Tuli*, 172 F.3d 707, 712 (9th Cir.1999). In his Amended Complaint, Plaintiff invokes the diversity jurisdiction of the Court pursuant to 28 U.S.C. § 1332(a)(2) because he is a citizen of Maryland and Defendant Keppel is a citizen of the State of Washington, and the amount in controversy exceeds $75,000.00. Dkt. 11, p. 2. There is no federal question asserted in the Amended Complaint. In his Answer to the Amended Complaint, Defendant Keppel admits that this Court has diversity jurisdiction in this matter. Dkt. 18, p. 2.

D. <u>*Eitel* Factors</u>

    1. <u>Possibility of Prejudice to Plaintiff</u>

The first factor considers whether Plaintiff will suffer prejudice if default judgment is not

1  entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal.2002). Absent

2  entry of default judgment, Plaintiff would be without another recourse for recovery. Defendant

3  Keppel denied the factual allegations comprising Plaintiff's claims. Dkt. 18. Thereafter, he has

4  failed to otherwise defend this action, has ignored discovery requests, and has repeatedly ignored

5  the Court's orders. As a result, Plaintiff's claims cannot move forward on the merits and his

6  ability to obtain effective relief will be negatively impacted. *Elektra Entm't Grp. Inc. v.*

7  *Crawford*, 226 F.R.D. 388, 391 (C.D. Cal. 2005). Accordingly, the first *Eitel* factor favors

8  default judgment.

        2.      <u>Merits of Plaintiff's Substantive Claims</u>

For purposes of liability the well-pleaded factual allegations in the complaint are taken as true on default. *Geddes*, 559 F.2d at 560. Plaintiff seeks default judgment against Defendant Keppel for defamation and the intentional infliction of emotional distress. Although set out as a separate claim, Plaintiff's allegations of "aiding and abeting" are reviewed in context of his substantive claims. In addition, Plaintiff alleges "joint and several" liability, but as this is a theory of liability and not an independent cause of action, the Court does not address it here.

        (a)      <u>Defamation</u>

The elements of a cause of action for defamation in Washington are (1) a false statement; (2) lack of privilege; (3) fault; and (4) damages. *Herron v. KING Broadcasting Co.*, 112 Wash.2d 762, 768, 776 P.2d 98 (1989). To establish the falsity element, the plaintiff must show the challenged statement was "provably false." *Schmalenberg v. Tacoma News, Inc.*, 87 Wash.App. 579, 590–91, 943 P.2d 350 (1997). "Expressions of opinion are protected by the First Amendment" and are "not actionable." *Robel v. Roundup Corp.*, 148 Wash.2d 35, 55, 59 P.3d 611 (2002) (quoting *Camer v. Seattle Post–Intelligencer*, 45 Wash.App. 29, 39, 723 P.2d 1195

ORDER RE: MOTION FOR DEFAULT JUDGMENT - 5

(1986)).

Whether a given communication constitutes defamation per se may be either a question of law or a question of fact. "The imputation of a criminal offense involving moral turpitude has been held to be clearly libelous per se." *Caruso v. Local Union No. 690 of Int'l Brotherhood of Teamsters*, 100 Wash.2d 343, 353, 670 P.2d 240 (1983) (citing *Ward v. Painters' Local 300*, 41 Wash.2d 859, 252 P.2d 253 (1953)); *Maison de France v. Mais Oui!, Inc.*, 126 Wash.App. 34, 45, 108 P.3d 787 (2005) (citing *Ward*, 41 Wash.2d 859, 252 P.2d 253).

Plaintiff alleges:

- On July 11, 2016, "Defendant Robinson falsely stated on Facebook that Plaintiff had sexually assaulted Klag on the night of July 3, 2016" and "that Plaintiff had engaged in theft, stealing money from the models." Dkt. 11, ¶ 10.

- On or about July 5, 2016 through August 2016, Defendant Keppel "aided and abetted Defendant Robinson by allowing Robinson to use his Facebook account as Robinson's account had been shut down by Facebook over her postings, to assist Robinson and republishing Robinson's known defamatory postings." *Id.*, ¶ 12.

- On November 1 and 2, 2016, Robinson admitted on Facebook that she lied and made false statements against Plaintiff. *Id.*, ¶ 13.

- "Defendants' [sic] posted written and video nine times on various social media platforms accusing the Plaintiff of sexual assault, being a pervert, sexual predator, and manipulator along with other outrageous terms." *Id.*, ¶ 15.

These allegations sufficiently establish defamation per se because the statements impute Plaintiff with the commission of crimes. In addition, Plaintiff has sufficiently alleged Defendant Keppel's assistance and his own conduct in the publication of the statements on his Facebook account.[2] Plaintiff alleged the statements are false, Defendant Keppel knew the statements were

---

[2] For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with another or pursuant to a common design by him; or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself; or (c) gives substantial assistance

ORDER RE: MOTION FOR DEFAULT JUDGMENT - 6

1  false, he intentionally assisted Defendant Robinson in publishing the statements to cause harm to
2  Plaintiff, and Plaintiff in fact suffered harm. Thus, the Court finds that Plaintiff sufficiently
3  alleged a claim of defamation per se against Defendant Keppel.

(b) Intentional Infliction of Emotional Distress

The elements of the tort of outrage are (1) extreme or outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to the plaintiff of severe emotional distress. *Robel*, 148 Wash.2d at 41, 59 P.3d 611. The extreme or outrageous conduct alleged here is the alleged defamation per se. As alleged, the defamatory statements constitute extreme or outrageous conduct as they falsely impute Plaintiff with the commission of crimes. In addition, Plaintiff alleges that as a result of Defendant Keppel's outrageous conduct, Plaintiff suffers "from depression, fear, nausea, panic attacks, and found to have physical manifestations in his internal organs such as his liver" and that he "now requires the use of an emotional support animal for the rest of his life as recommended by his therapist." Dkt. 11, ¶ 19. These allegations establish the elements of Plaintiff's intentional infliction of emotional distress claim.

Because the well-pleaded factual allegations in the complaint are taken as true on default, and the Court finds that the factual allegations establish defamation per se and the intentional infliction of emotional distress, this factor weighs in favor of default judgment.

3. Sufficiency of the Complaint

As the allegations of the Amended Complaint are sufficiently pled, this weighs in favor of default judgment.

---

to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person. RESTATEMENT (SECOND) OF TORTS § 876 (1979) (cited with approval in *Martin v. Abbott Laboratories*, 102 Wash.2d 581, 689 P.2d 368, 378 (1984)).

ORDER RE: MOTION FOR DEFAULT JUDGMENT - 7

4. <u>Sum of Money at Stake</u>

The fourth *Eitel* factor is the sum of money at stake. In weighing this factor, courts consider whether large sums of money are involved and whether "the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F.Supp.2d 916, 921 (N.D.Cal.2010); *see also Eitel*, 782 F.2d at 1472. If the amount of money is large or disproportionate, this factor weighs against default judgment. *See Getty Images*, 2014 WL 358412, at *4. Plaintiff claims damages in excess of $1.5 million for loss of business contracts, discharge from the U.S. Marine Corps, loss of military pay and retirement, past and future medical expenses and past and future damages for emotional distress. Dkts. 11 and 54. As discussed below, the Court finds that Plaintiff has not carried his burden regarding the actual damages he claims and that the damages he claims are very large for a grant of default judgment. Accordingly, the Court finds that this factor weighs against default judgment.

The Court also notes that Plaintiff included requests for additional relief and damages in his brief that were not included in his Amended Complaint. Plaintiff asks for declaratory judgment finding that Defendant Keppel engaged in conduct with malice, oppression, or fraud, and for punitive damages of $500,000.00. Dkt. 54, p. 6. Because these additional damages are different in kind and exceed in amount that prayed for in Plaintiff's Amended Complaint, they have not been considered. See Fed. R. Civ. P. 54(c).

5. <u>Possibility of Dispute Concerning Material Facts</u>

The fifth factor is the possibility of a dispute concerning material facts. When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true. *See*, *e.g.*, *Microsoft Corp. v. Lopez*, 2009 WL 959219, at *3 (W.D.Wash. 2014). Where a plaintiff "has supported its

claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment." *Landstar*, 725 F.Supp.2d at 922; accord *Kloepping v. Fireman's Fund*, No. C 94–2684 TEH, 1996 WL 75314, at *3 (N.D.Cal. Feb. 13, 1996) (a "plaintiff's presumptively accurate factual allegations leave little room for dispute," especially where the "defendant had the opportunity to dispute the facts alleged, but has avoided and utterly failed to respond to plaintiff's allegations"). Thus, where a plaintiff has made allegations supported by evidence and the defendant has not challenged those allegations, this factor weighs in favor of default judgment. *Getty Images*, 2014 WL 358412, at *4.

As previously noted, Defendant Keppel filed an Answer to the Amended Complaint but otherwise failed to defend this action and willfully ignored this Court's orders. This, along with Plaintiff's well-pleaded allegations of defamation per se and intentional infliction of emotional distress, supports default judgment.

6. <u>Whether Default was Due to Excusable Neglect</u>

The sixth factor addresses whether the entry of default is due to excusable neglect. Where entry of default is due to the defendant's bad faith conduct in violating multiple court orders, the behavior is willful and does not constitute excusable neglect. *See Davidson v. Barnhardt*, No. CV 11–7298 FMO VBKX, 2013 WL 6388354, at *15 (C.D.Cal. Dec. 6, 2013). Here, the court entered default as a sanction for Defendant Keppel's willful failure to timely comply with Plaintiff's discovery requests and the Court's discovery orders. Dkt. 53. Thus, the Court has already determined that default was not due to Defendant Keppel's excusable neglect. Further, Defendant Keppel's continued failure to pay the previous discovery sanctions demonstrates a lack of availability of lesser sanctions. Accordingly, this factor weighs in favor of default

judgment.

### 7. Policy Favoring Decisions on the Merits

The seventh factor requires the court to weigh whether default judgment is appropriate in light of the policy favoring decisions on the merits. This factor reflects the general principle that cases should be decided on their merits when it is reasonably possible to do so. *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir.1985). Although this factor "almost always disfavors the entry of default judgment," it is not dispositive. *Vawter v. Quality Loan Serv. Corp. of Wash.*, No. C09–1585JLR, 2011 WL 1584424, at *6 (W.D.Wash. Apr. 27, 2011); *see also Microsoft*, 2009 WL 959219, at *3 ("[T]he mere existence of Fed.R.Civ.P. 55(b) indicates that this *Eitel* factor is not alone dispositive"). Here, Defendant Keppel's history of unexcused delay, bad faith, and willful defiance of the Court's orders demonstrates that it is unlikely that Plaintiff's claims can be resolved on their merits. Therefore, this factor also weighs in favor of default judgment.

### 8. Totality of Eitel Factors

The *Eitel* factors support default judgment in this case. Plaintiff has no other recourse, his substantive claims have merit, and his complaint is sufficiently pled. Further, there is no possibility of a dispute about material facts, and the entry of default against Defendant Keppel was not due to excusable neglect. Given the factual circumstances here and the procedural history of this litigation, these factors outweigh the large amount of money at stake in the case and the policy favoring decisions on the merits. The Court accordingly **GRANTS** Plaintiff's motion for default judgment, and now calculates damages.

### E. Calculation of Damages

The court must ensure that the amount of damages is reasonable and demonstrated by the

evidence. *See* Fed. R. Civ. P. 55(b); *Getty Images (US), Inc. v. Virtual Clinics*, 2014 WL 358412 (W.D.Wash.2014). In addition, "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]." Fed. R. Civ. P. 54(c). In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2).

Plaintiff claims actual damages in excess of $1 million – $1,117,461.00 for loss of income and military pension; $9,753.72 for medical bills; $15,000.00 for future medical expenses; and $24,383.00 for loss of business contracts. Plaintiff also seeks noneconomic damages of $50,000.00 for past and future emotional distress. Dkts. 11 and 54.

Plaintiff has failed to establish that he is entitled to recovery of the special damages he seeks.

    1.    <u>Loss of Military Pay and Pension</u>

Plaintiff alleges that Defendant Keppel's defamatory statements resulted in Plaintiff's dishonorable discharge from the United States Marine Corps six years short of his retirement. The damages Plaintiff attributes to his discharge are $249,726.00 of lost income; $148,297.00 of lost housing allowance; and $719,418.00 of lost pension.

Plaintiff states he was an active member of the United States Military from July 2004 to July 2018; he was terminated as a result of the defamatory statements made by Defendants Robinson and Keppel; and, he lost six years of employment in the military. Dkt. 59, Declaration of Oscar Lee Olive, IV, ¶¶ 2, 3. According to Plaintiff's former commanding officer, Major Brian Dix, U.S.M.C. (Ret.), Plaintiff was "an impeccable Marine," who "would have earned the rank of E-7 Gunnery Sergeant by fiscal year 2018," which would have been his final promotion and rank of retirement after 20 years of service," after Plaintiff completed an additional six years

of service. Dkt. 60, Declaration of Brian Dix, p. 2.

Plaintiff provides evidence reflecting that at the time of his discharge from the military, he was earning $41,381.58 per year, with a monthly housing allowance of $2,595.00. Dkt. 59, Exs. 2, 3. Plaintiff also attaches a computer calculation of the military pension he would have received if he had retired after 20 years of service. *Id.*, Ex. 4.[3] Joseph Montgomery, CPA, provides a calculation of the amounts Plaintiff contends he would have received during an additional six years in the military and for his retirement. Dkt. 56, Declaration of Joseph Montgomery. Notably however, Plaintiff has provided no evidence to support his claim that he was discharged from the military *because of* Defendant Keppel's defamatory statements.

The only document provided is the "ADMINISTRATIVE DISCHARGE BOARD REPORT; FINDINGS AND RECOMMENDATIONS IN THE CASE OF STAFF SERGEANT OSCAR L. OLIVE IV …". Dkt. 54, Ex. 1. This report indicates that the Discharge Board found "by majority vote that the preponderance of the evidence" proves the acts alleged in "Articles 92 & 120" and recommended Plaintiff's separation from the Marine Corps, "other than honorable." *Id.*, pp. 1, 2. The discharge report references a record, exhibits, and the "facts and circumstances and supporting documents which are the basis for the board's findings and recommendations" "(enclosure (1))," but Plaintiff provided none of the supporting documents, which would presumably explain why he was discharged from the Marine Corps.

---

[3] Also attached to Plaintiff's declaration is a copy of Defendant Robinson's Chapter 7 Bankruptcy Petition, wherein she values Plaintiff's claim against her at $1.5 million. Dkt. 59, Ex. 5. However, as this merely reflects the amount of damages requested by Plaintiff in his Amended Complaint and/or the value Defendant Robinson places on his claims, this evidence is not relevant nor probative of determining whether Plaintiff's damage claims may be fairly attributed to Defendant Keppel's conduct.

ORDER RE: MOTION FOR DEFAULT JUDGMENT - 12

The Uniform Code of Military Justice, 10 U.S.C. 10 U.S.C. § 892. Art. 92 addresses the failure to obey an order or regulation and § 920. Art. 120 addresses rape and sexual assault. However, the Court cannot assume the alleged defamatory statements made by Defendant Keppel was the basis of the Discharge Committee's decision to dishonorably discharge Plaintiff. Presumably, the documents supporting the Discharge Committee's decision provides the basis for their decision. Plaintiff was previously advised that he must provide the underlying documents supporting his discharge before the Court could properly consider whether these damages could be fairly attributed to Defendant Keppel's actions. *See* Dkt. 58, p. 4. Although he was advised of the deficiencies in his evidence and given additional time to support this damage claim, Plaintiff has failed to do so. Accordingly, the Court does not find that Plaintiff's claim for loss of military pay and pension are fair, reasonable, and related to his claims.

        2.       <u>Medical Bills</u>

In his Amended Complaint, Plaintiff alleges that, due to Defendant Keppel's outrageous actions, Plaintiff suffered extreme emotional distress, which manifested itself in "depression, fear, nausea, panic attacks, and found to have physical manifestations in his internal organs such as his liver," and that Plaintiff "now requires the use of an emotional support animal for the rest of his life as recommended by his therapist." Dkt. 11, ¶ 19. Plaintiff alleges that his medical bills are $9,753.72. Dkt. 59, Ex. 5. In support, Plaintiff provided only medical billings, totaling $7,179.09, which offer no medical explanation of the need for the expenses incurred: (1) "Emergency Eval & Mgmt" on February 27, 2019, in the amount of $1,708.00; and (2) "CT-Head, Emer Room, IV Therapy, Laboratory, and Pharmacy on February 27, 2019, in the amount of $5,471.09.

Plaintiff was previously advised that these billings are insufficient evidence to show a causal relation between the expenses incurred and the conduct of Defendant Keppel. Plaintiff was given additional time to provide the underlying documents supporting these medical bills, but he failed to do so. Accordingly, the Court does not find that Plaintiff's claim for medical expenses are fair, reasonable, and related to his claims. Similarly, Plaintiff's claim that he will incur $15,000.00 for "future medical loss," *see* Dkt. 54, is not supported.

3. <u>Loss of Business</u>

Plaintiff alleges that Defendant Kepel's defamatory statements spread throughout the photographic community and caused Plaintiff to lose several business contracts worth approximately $24,383.00. In support, Plaintiff provided copies of his business tax schedules. Dkt. 55, Exs. 1 and 2. While the tax schedules show business losses, the losses are not identified. Plaintiff has provided no evidence of the actual business contracts or shown that the contracts were lost because of the alleged defamation. Plaintiff was previously advised of the deficiency of this evidence and the Court allowed him time to provide additional support. Dkt. 58. He has failed to do so. The Court finds Plaintiff has failed to meet his burden of proof of damages to his business.

Although Plaintiff has not provided evidence sufficient to establish that he is entitled to recover special damages, the Court finds that an award of general damages is appropriate as he has appropriately plead defamation per se. *Ward v. Painters' Local Union No. 300*, 41 Wn.2d 859, 863, 252 P.2d 253 (1953) (A publication is also libelous per se if it imputes to the plaintiff criminal conduct involving moral turpitude.) Defamation per se is actionable without proof of special damages. *Amsbury v. Cowles Publ'g Co.*, 76 Wash.2d at 737, 458 P.2d 882 (1969); *Maison de France, Ltd. v. Mais Oui!, Inc.*, 126 Wash.App. at 53–54, 108 P.3d 787 (2005);

*Haueter v. Cowles Publ'g Co.*, 61 Wash.App. at 578, 811 P.2d 231 (1991). The defamed person is entitled to substantial damages without proving actual damages. *Waechter v. Carnation Co.*, 5 Wash.App. at 128, 485 P.2d 1000 (1971). Statements falling within the per se categories are thought to be so obviously and materially harmful to a plaintiff that damage can be presumed. *Arnold v. Nat'l Union of Marine Cooks & Stewards*, 44 Wash.2d 183, 187, 265 P.2d 1051 (1954). In addition, the Court may award mental anguish damages without proof of symptomatology or medical diagnosis because the defamatory statements at issue constitute extreme or outrageous conduct (by falsely imputing the commission of crimes). *See*, *Kloepfel v. Bokor*, 149 Wash.2d 92, 66 P.3d 630 (2003).

The Court has reviewed general damage awards in similar cases involving publication of defamatory per se statements on websites. For example, in *Isaac v. Daniels*, 2018 WL 1903606 (D. Hawai'i, March 30, 2018), where the defendant published false statements on a website (stating plaintiff was a sexual deviant, convicted sodomist, illegal alien, homosexual predator, and thief who stole millions from his employees), the Court found an award of $10,000.00 in general damages to be appropriate. *See also*, *RKM Intern Ltd. v. Fujita*, 2015 WL 2451187 (D. Hawai'i, April 29, 2015) *adopted by*, No. CIV. 14-00539 JMS, 2015 WL 3369472 (D. Haw. May 22, 2015) (and cases cited therein) (finding an award of $10,000 in general damages appropriate for a website that accused a corporate plaintiff of defrauding its customers); *Waechter v. Carnation Co.*, 5 Wash.App. 121, 485 P.2d 1000 (1971) (Upholding jury award of $25,000.00 for defamatory assertions that competitor delivered rotten milk).

## CONCLUSION

Based on the foregoing and given the nature of the alleged defamatory statements here (allowing Defendant Robinson to use Defendant Kepel's Facebook account from July 5, 2016

ORDER RE: MOTION FOR DEFAULT JUDGMENT - 15

through August 2016 to republish the known defamatory statements and Defendant Robinson's retraction on Facebook on November 1 and 2, 2016), the Court similarly finds that an award of $10,000 in general damages is appropriate.

Accordingly, it is **ORDERED** that Plaintiff's motion for default judgment (Dkt. 54) be **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Default judgment is entered in Plaintiff's favor and against Defendant Justus Keppel as to Plaintiff's claims for defamation per se and for the intentional infliction of emotional distress;

(2) Plaintiff is awarded general damages in the amount of $10,000.00 against Defendant Justus Kepel.

(3) Pursuant to Fed. R. Civ. P. 54(d)(1) and LCR 54(d), the prevailing party in whose favor judgment is entered is entitled to costs. Plaintiff may file a bill of costs pursuant to LCR 54(d)[4] after judgment is entered.

(4) Plaintiff's request for other relief not otherwise specified herein is **DENIED**.

DATED this 30th day of September, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

---

[4] The motion must be served within twenty-one days after the entry of judgment, noted for consideration pursuant to LCR 7(d)(3), and verified in a declaration that each requested cost and/or fee is correct and has been necessarily incurred and/or actually and necessarily performed (includes filing fees, witness fees, and other types of fees but not attorney fees). Failure to file a motion for costs shall be deemed to be a waiver of all costs, other than statutory costs.

ORDER RE: MOTION FOR DEFAULT JUDGMENT - 16